UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**STEVEN CARROLL,**

Case No.

Plaintiff,

vs.                                                        Hon.

**CONSUMERS ENERGY CORPORATION,**
**CMS ENERGY CORPORATION,** and
**STACI NOWAK,** jointly and severally,

Defendants.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in
this Honorable Court or any other Court
arising out of the same transaction and
occurrence.

**NOW COMES** Plaintiff, **STEVEN CARROLL**, for his Complaint against

Defendants Consumers Energy Corporation and CMS Energy Corporation, stating the

following:

## INTRODUCTION

1.    Plaintiff Steven Carroll, an African American, was a senior business consultant with Defendants beginning January 2019.  In May 2019, Plaintiff was interviewed regarding another African American employee's complaint of racial discrimination and a hostile work environment.  In the interview, Plaintiff affirmed that he viewed that African American employees were treated and spoken to differently by his supervisor Defendant Nowak.  Following this testimony, Plaintiff was targeted, demeaned, and frequently undermined by Nowak.  The hostile situation provoked Plaintiff's severe anxiety forcing him back on medication and requiring intermittent FMLA to manage.  Plaintiff submitted internal complaints of racial discrimination to no avail.  Ultimately, Plaintiff was terminated around an hour after providing a written narrative outlining the racial discrimination and hostile treatment he faced.

Within this Complaint, Plaintiff alleges he was subjected to a hostile workplace, discriminated against, and terminated due his race and in retaliation for protected activity in violation of 42 U.S.C. § 1981 and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. seq.*, Michigan's Persons with Disabilities Civil Rights Act 220 of 1976, MCL 37.1602, and in retaliation for exercising his rights under the Family Medical Leave Act of 1993.

**PARTIES**

2.     Plaintiff Steven Carroll is an African American individual who was employed with the Defendants and resides in West Bloomfield, Michigan, Oakland County.

3.     Defendant Consumers Energy Corporation is a domestic profit corporation organized under the laws of the State of Michigan and operates within the State of Michigan. Plaintiff was an employee of Defendant.

4.     Defendant CMS Energy Corporation is a domestic profit corporation organized under the laws of the State of Michigan and operates within the State of Michigan. Plaintiff was an employee of Defendant.

5.     Defendant Staci Nowak is an individual and agent of Defendants.   At all times relevant to this lawsuit Ms. Nowak was Plaintiff's supervisor.  Upon information and belief, Ms. Nowak resides within the Eastern District of Michigan.

**JURISDICITON AND VENUE**

6.     This Court has original jurisdiction of Plaintiff's claims under to 42 USC § 1981 and Federal Claim under the Family Medical Leave Act of 1993 pursuant to 28 U.S.C. § 1331.

7.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8.     This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

9.     Plaintiff has filed a charge with the Michigan Department of Civil Rights alleging racial discrimination and retaliation. Plaintiff will seek to amend his complaint once issued the right to sue pursuant to Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.*

## GENERAL ALLEGATIONS

10.     Steven Carroll ("Plaintiff" of "Carroll") is African American and a member of a protected class based on his race.

11.     Plaintiff also suffers from severe anxiety which limits several of his major life functions. However, at all times, Plaintiff is/was able to perform all of his essential job duties with or without an accommodation.

12.     Plaintiff began working for Defendants Consumer Energy Corporation and CMS Energy Corporation (collectively "Consumers Energy") as a Senior Business Consultant in January 2019.

13.     In his position, Plaintiff supervised approximately thirteen employees who directly reporting to him.

14.     Plaintiff was supervised by the state-wide customer service manager Defendant Staci Nowak ("Nowak").

15.     Nowak is Caucasian.

16.      Shortly after Plaintiff's hire, he became concerned of the work environment when Nowak warned him that several of the employees who will be

4

reporting to him applied for the same position and are not happy that Plaintiff was hired over them.

17.    Nowak also directed Plaintiff to look to these same individuals to help further his knowledge of the department and computer system rather than assisting him herself.

18.    Shortly into his employment, Plaintiff noticed that Nowak spoke differently to African American employees and held them to a different standard. Nonetheless, Plaintiff focused on his work.

19.    In May 2019, Plaintiff had a meeting with Richard Woolford, Nowak's supervisor, who questioned Plaintiff in relation to a claim of racial discrimination against Nowak brought by another African American employee. During the meeting, Plaintiff affirmed that he, and other African American employees, felt that Nowak was more comforting to Caucasian employees within the company than them.

20.    On information and belief, Nowak was notified or otherwise became aware of Plaintiff's testimony against her in regard to her treatment of African American Employees.

21.    After testifying against Nowak, Plaintiff began to face increasingly hostile treatment from Nowak.

22.     Nowak began to frequently undermine Plaintiff in front of his subordinates and intentionally create conflict. For instance, Nowak would overturn scheduling decisions made by Plaintiff without consulting him.

23.     Similarly, Nowak would frequently circumvent Plaintiff to have direct conversations with his subordinates which made it extremely difficult for Plaintiff to lead. Nowak was not doing this with non-African American comparable employees.

24.     While his Caucasian and Latino counterparts received effective training, positive support and respect, Plaintiff was frequently subjected to unjustified negative feedback without any specifics, open dialogue, or measurables to address the alleged deficiencies.

25.     Similarly, Plaintiff received a heavier workload than his coworker who was not African American.

26.     Nowak began blaming Plaintiff for pre-existing issues outside of his control. Additionally, Nowak openly discussed her perceived issues with Plaintiff's performance with his coworkers without ever notifying Plaintiff until there was not enough time for Plaintiff to constructively make corrections.

27.     Plaintiff also struggled to get any assistance from Nowak regarding the concerns he expressed about the work environment. Plaintiff contacted Nowak multiple times regarding concerns with team engagement and putting together a plan. Nowak

responded in November 2019 by putting Plaintiff on a guidance counseling plan—a disciplinary action.

28.     The guided counseling plan contained no concrete facts or feedback regarding Plaintiff's performance. Plaintiff attempted to discuss and rebut the claims in the plan, Plaintiff was told to "stop speaking and listen to what he was being told." Plaintiff felt the plan was continued retaliation by Nowak. Nonetheless, Plaintiff held his head high and continued to focus on his work.

29.     On or around January 7, 2020, Plaintiff was informed that he had completed the action items on the guided counseling plan.

30.     On March 20, 2020, Plaintiff cc'd Nowak on an email to one of his subordinates requesting specific information to perform validation of their work. Nowak responded to email, without consulting Plaintiff, informing the employee that *she* does not need all of the information requested. Nowak continued the conversation with the employee, directly undermining Plaintiff, by stating that she only requested Plaintiff obtain the limited information she was seeking.

31.     On or around March 24, 2020 [1], Plaintiff placed in a Performance Correction Plan ("PCP").  Among other things, Nowak specifically referred to the above

---

[1] In early March 2020, America began seeing multiple cases of the coronavirus. On March 10, 2020, Michigan's Governor Whitmer issued Executive Order 2020-4 declaring a state of emergency across the state of Michigan.  On March 23, 2020, the day before Plaintiff was placed on the PCP, Gov. Whitmer issued Executive Order 2020-21 which explicitly ordered non-essential employees to cease working and that any work which may be performed through telecommunication must be performed through telecommunication.  As the PCP largely focused on improving communication, it is Plaintiff's position that the timing of Nowak's decision to place him on the PCP immediately after these announcements is further evidence of her intent to have Plaintiff fail.

incident in the PCP stating that Plaintiff "doesn't communicate to his team clearly the reasons why they are being asked to do thing" and that she has to follow up and explain"—ignoring any reasoning why Plaintiff may have sought additional information from his employees.

32.     As part of the PCP, Plaintiff would have weekly meetings with Nowak. Throughout these meetings, there was no mention of any actual metrics or data demonstrating that Plaintiff was failing to meet any objectives or action items. Instead, the meetings consisted mainly of general conversation and subjective comments by Nowak about how Plaintiff talks and demeaning him.

33.     It was unclear to Plaintiff why he was even placed on a PCP and he viewed it to be further evidence of the disparate treatment he faced due to his race and continued retaliation for his testimony against Nowak. Plaintiff asked for the feedback or metrics leading to him being placed on the PCP but was told by Nowak that the information he sought was confidential.

34.     On or around April 13, 2020, Plaintiff emailed the Compliance Office to inform them he was working in a hostile work environment and being harassed due to his race.

35.     On April 27, 2020, Plaintiff received a response from the Compliance Office dismissing his claims of discrimination stating that they "understand that it is frustrating when you disagree with your leader regarding your performance…"

36.     In May 2020, Plaintiff reached out to Human Resources to submit a complaint for a racial discrimination and hostile workplace. After, Plaintiff was contacted and questioned.

37.     Plaintiff's work hostile environment affected his anxiety for the worse.  As a result, Plaintiff sought treatment and was prescribed medication to manage the symptoms of his anxiety.

38.     On or around June 23, 2020, Plaintiff was approved for intermittent FMLA leave due to his increasing anxiety related to the job.

39.     From this point forward, Plaintiff occasionally utilized his intermittent FMLA to manage his anxiety.

40.     On August 5, 2020, Plaintiff received a written response from the Compliance Department notifying him that their investigation of his complaint of racial discrimination and harassment was complete.  The investigation found Plaintiff's claims to be unsubstantiated.

41.     On or around August 6, 2020, Plaintiff submitted a written narrative outlining the racial discrimination and hostile treatment he was subjected in his position with Defendants.

42.     Around an hour after submitting the above written narrative, Plaintiff was informed that he was being terminated.

43.     On August 12, 2020, Plaintiff was officially terminated from his employment with Defendants.

44.     On information and belief Plaintiff was replaced by an individual who is not African American.

45.     On August 13, 2020, the undersigned counsel submitted two letters to Defendant Consumer Energy Corporation on behalf of the Plaintiff. The first requested Consumers place a litigation hold on relevant evidence. The second letter requested Plaintiff's employee file pursuant to the Bullard-Plawecki Employee Right to Know Act, MCL 423.501 *et seq.* The Defendants did not respond to either letter or provide Plaintiff his employee file.

46.     On September 17, 2020, Plaintiff submitted a charge of racial discrimination, hostile work environment, and retaliation with the Michigan Department of Civil Rights. The Defendants have not participated in the investigation in any form.

47.     As 180 days have passed since the filing of the charge, Plaintiff has requested the investigation be concluded and he be issued the right to sue. Plaintiff will amend this complaint once he has obtained the right to sue pursuant to Title VII.

## COUNT I
## RACIAL DISCRIMINATION - 42 U.S.C. § 1981

48.     All preceding paragraphs are incorporated by reference.

49.     Plaintiff is a member of a protected minority class on the basis of his race.

50.     As an employee, Plaintiff had a contractual employment relationship with Defendants.

51.     During the course of Plaintiff's employment with Defendants, Defendants violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of employment "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981(b), as amended.

52.     Plaintiff was treated differently than his Caucasian comparators.

53.     Plaintiff was terminated due to his race.

54.     Plaintiff alleges that his termination is in violation of his right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

55.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT II
## HOSTILE WORK ENVIRONMENT - 42 U.S.C. § 1981

56.     All preceding paragraphs are incorporated by reference.

57.     Plaintiff is a member of a protected minority class on the basis of his race.

58.     Plaintiff was subject to unwelcome harassment and discriminatory treatment based on his protected status.

59.     The work environment was abusive for Plaintiff.

60.     The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of his employment.

61.     Defendants were aware of the harassment and abuse Plaintiff was facing and failed to act.

62.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT III
## RETALIATION - 42 U.S.C. § 1981

63.     All preceding paragraphs are incorporated by reference.

64.     Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he complained of the racial discrimination he was subjected to in the workplace.

65.     Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he participated in the investigation of racial discrimination against a coworker, Deborah Hines.

66.     Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he notified Defendants that his supervisor, Defendant Nowak is hostile and uncomfortable around African American employees.

67.     Defendants retaliated against Plaintiff due to this protected activity.

68.     Defendants began holding Plaintiff's performance to a different standard in retaliation for this protected activity.

69.     Defendants terminated Plaintiff in retaliation of Plaintiff's protected activity.

70.     Defendants' termination of Plaintiff's employment on this basis violates 42 U.S.C. § 1981.

71.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT IV
## RACIAL DISCRIMINATION - ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

72.     All preceding paragraphs are incorporated by reference.

73.     At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

74.     Defendants treated and disciplined Plaintiff different than similarly situated Caucasian employees.

75.     Plaintiff's race was a factor that made a difference in Defendants' decision to terminate Plaintiff.

76.     Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

77.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT V**
**RACIAL DISCRIMINATION (HOSTILE WORK ENVIRONMENT)**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

78.     All preceding paragraphs are incorporated by reference.

79.     Plaintiff faced severe harassment in the workplace due to his race.

80.     The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of his employment.

14

81.     Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

82.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VI
## RETALIATION - ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

83.     All preceding paragraphs are incorporated by reference.

84.     Plaintiff engaged in protected activity when he complained of the racial discrimination he was subjected to in the workplace.

85.     Plaintiff engaged in protected activity when he participated in the investigation of racial discrimination against a coworker, Deborah Heinz.

86.     Plaintiff engaged in protected activity when he notified Defendants that his supervisor, Defendant Staci Nowak is hostile and uncomfortable around African American employees.

87.     Defendants retaliated against Plaintiff due to this protected activity.

88.     Defendants began holding Plaintiff's performance to a different standard in retaliation for this protected activity.

89.     Defendants terminated Plaintiff in retaliation of Plaintiff's protected activity.

90.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VII
## DISABILITY DISCRIMINATION – MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT 220 OF 1976, MCL 37.1602

91.     All preceding paragraphs are incorporated by reference.

92.     Plaintiff has a serious and disabling medical condition, a covered disability under the act, was perceived as having a disability and/or had a record of having a disability.

93.     Plaintiff's disability affected her ability to engage in one or more major life activities.

94.     Plaintiff was/is qualified for his former position.

95.     Plaintiff was terminated due to his disability.

16

96.     As a direct and proximate result of Defendants' discrimination, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

**COUNT VIII**
**VIOLATION OF THE FAMILITY MEDICAL LEAVE ACT -**
**INTERFERENCE**

97.     All preceding paragraphs are incorporated by reference.

98.     Plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii).

99.     At the time of his termination, Plaintiff had worked over 1250 hours within the 12 month period preceding his leave request.

100.    Defendant has more than 50 employees and is an employer subject to the FMLA.

101.    Plaintiff was approved for intermittent FMLA approximately June 23, 2020.

102.    Defendants retaliated against Plaintiff in violation of the FMLA leave by terminating him in response to him requesting to utilize and/or utilizing protected leave in violation of 29 USC 2615 (a) and 29 CFR 825.220.

103.    Defendants' actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

104.    There is a causal connection between Plaintiff's protected activity and Defendants' retaliatory actions described above.

105.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT IX
## VIOLATION OF THE MICHIGAN BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT

106.    All preceding paragraphs are incorporated by reference.

107.    Defendants and Plaintiff were both covered by the Bullard-Plawecki Employee Right to Know Act, MCL 423.501 *et seq.*

108.    Plaintiff has a right to review and receive a copy of his personnel file, and the right to file a written response to the records.

109.    Plaintiff submitted a request to Defendant Consumers Energy Corporation on August 13, 2020.

110.   Defendants refused or otherwise failed to produce Plaintiff's personnel files or release his records.

111.   Plaintiff is entitled to injunctive relief, actual damages, costs, reasonable attorney fees, and any other damages this Court finds appropriate.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of the FMLA, § 1981, ELCRA, and PWDCRA;

b.   Award Plaintiff all lost wages and benefits, past and future, to which she is entitled;

c.   Award Plaintiff appropriate equitable relief;

d.   Award Plaintiff compensatory damages;

e.   Award Plaintiff liquidated damages pursuant to the FMLA;

f.   Award Plaintiff punitive damages;

g.   Award Plaintiff reasonable attorney fees, costs and interest; and

h.   Award such other relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com

*Attorneys for Plaintiff*

DATE:   May 25, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**STEVEN CARROLL,**

Case No.

      Plaintiff,

vs.

Hon.

**CONSUMERS ENERGY CORPORATION,**
**CMS ENERGY CORPORATION,** and
**STACI NOWAK,** jointly and severally,

      Defendants.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Steven Carroll hereby demands for a trial by jury.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

DATE: May 25, 2021